# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

DAVID VANCHOFF, ANDREW CROSS, AARON LEIZEROVICI, and FIREARMS POLICY COALITION, INC.,

    Plaintiffs,

v.

LETITIA JAMES, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF NEW YORK, KEVIN P. BRUEN, IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF THE NEW YORK STATE POLICE, ANNE T. DONNELLY, IN HER OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR NASSAU COUNTY, RAYMOND A. TIERNEY, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR SUFFOLK COUNTY, and ERIC GONZALEZ, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR KINGS COUNTY,

    Defendants.

Case No. 2:22-CV-04075-GRB-ST

**AMENDED COMPLAINT**

David Vanchoff, Andrew Cross, Aaron Leizerovici, and Firearms Policy Coalition, Inc. ("FPC"), by and through counsel of record, bring this complaint against Defendants, New York officials responsible for enforcing a state law infringing the right of law-abiding citizens to keep and bear commonly possessed firearms for defense of self and family and for other lawful purposes, and allege as follows:

**INTRODUCTION**

1. The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. amend. II. Under this constitutional provision, Plaintiffs Vanchoff, Cross, Leizerovici and other law-abiding, responsible New Yorkers, have a fundamental, constitutionally guaranteed right to keep common firearms for defense of self and family and for other lawful pursuits.

2. But Defendants have enacted and enforced a flat prohibition on the possession, manufacture, transport, or disposal of many common semiautomatic firearms—tendentiously labeled "assault weapons"—by ordinary citizens, making it criminal for law-abiding citizens to exercise their fundamental right to keep and bear such arms. *See* N.Y. PENAL LAW §§ 265.00(22), 265.02(7), 265.10.

3. Defendants' enforcement of New York's ban denies individuals who reside in New York, including individual Plaintiffs and members of FPC, their fundamental, individual right to keep and bear common arms.

4. The Second Circuit has previously upheld the laws at issue against a Second Amendment challenge. *See New York State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 243 (2d. Cir. 2015) The recent Supreme Court case *New York State Rifle and Pistol Association v. Bruen*, however, abrogated that decision and no governing caselaw forecloses Plaintiffs' claims.

597 U.S. ---, 142 S. Ct. 2111 (2022).

## JURISDICTION & VENUE

5.  This Court has subject-matter jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331 and 1343.

6.  Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

7.  Venue lies in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2).

## PARTIES

8.  Plaintiff David Vanchoff is a natural person, a resident of Nassau County, New York, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Vanchoff is a member of Plaintiff FPC.

9.  Plaintiff Andrew Cross is a natural person, a resident of Suffolk County, New York, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Cross is a member of Plaintiff FPC.

10. Plaintiff Aaron Leizerovici is a natural person, a resident of Kings County, New York, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Leizerovici is a member of Plaintiff FPC.

11. Plaintiff FPC is a nonprofit organization incorporated under the laws of Delaware with its principal place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights, especially, but not limited to, the fundamental, individual Second Amendment right to keep and bear arms, advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC

brings this action on behalf of its members, including the named Plaintiffs herein, who seek to exercise their right to keep and bear common semiautomatic arms for lawful purposes in New York.

12. Defendant Letitia James is the Attorney General of New York. As Attorney General, she exercises, delegates, or supervises all the powers and duties of the New York Department of Law, which is responsible for executing and enforcing New York's laws and regulations governing the possession of firearms and magazines. Her official address is Office of the Attorney General, The Capitol, Albany, NY 12224-0341. She is being sued in her official capacity.

13. Defendant Kevin P. Bruen is the Superintendent of the New York State Police. As Superintendent, subject to the oversight and supervision of the Governor, he exercises, delegates, or supervises all the powers and duties of the New York Division of State Police, including executing and enforcing New York's laws and regulations governing the possession of firearms and magazines. His official address is New York State Police Office of the Superintendent, Bldg. 22, 1220 Washington Ave, Albany, NY 12226. He is being sued in his official capacity.

14. Defendant Anne T. Donnelly is the District Attorney for Nassau County. As District Attorney, Donnelly "is the prosecutorial officer with the responsibility to conduct all prosecutions for crimes and offenses cognizable by the courts of the county in which [she] serves." *People v. Di Falco,* 44 N.Y.2d 482, 487, 377 N.E.2d 732, 735 (1978). Her official address is Nassau County District Attorney, 262 Old Country Road, Mineola, NY 11501. She is being sued in her official capacity.

15. Defendant Raymond A. Tierney is the District Attorney for Suffolk County. As District Attorney, Tierney "is the prosecutorial officer with the responsibility to conduct all

prosecutions for crimes and offenses cognizable by the courts of the county in which he serves." *People v. Di Falco,* 44 N.Y.2d 482, 487, 377 N.E.2d 732, 735 (1978). His official address is Suffolk County District Attorney's Office, William J. Lindsay County Complex-Bld. 77, Veterans Memorial Highway, Hauppauge, NY 11788. He is being sued in his official capacity.

16. Defendant Eric Gonzalez is the District Attorney for Kings County. As District Attorney, Gonzalez "is the prosecutorial officer with the responsibility to conduct all prosecutions for crimes and offenses cognizable by the courts of the county in which he serves." *People v. Di Falco,* 44 N.Y.2d 482, 487, 377 N.E.2d 732, 735 (1978). His official address is Brooklyn District Attorney's Office, 350 Jay Street, Brooklyn, NY 11201. He is being sued in his official capacity.

## FACTUAL ALLEGATIONS

**I.  NEW YORK'S UNCONSTITUTIONAL SEMIAUTOMATIC FIREARM BAN**

17. New York tendentiously applies the inaccurate label of "assault weapon"[1] to many semiautomatic[2] firearms in common use and criminalizes their possession. N.Y. PENAL LAW §§ 265.00, et seq.

18. Specifically, New York defines "assault weapon" as: (a) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least one of the following characteristics:

    (i)    a folding or telescoping stock;

    (ii)   a pistol grip that protrudes conspicuously beneath the action of the weapon;

---

[1] N.Y. PENAL LAW § 265.00(22).

[2] "Semiautomatic" means "means any repeating rifle, shotgun or pistol, regardless of barrel or overall length, which utilizes a portion of the energy of a firing cartridge or shell to extract the fired cartridge case or spent shell and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge or shell." N.Y. PENAL LAW § 265.00(21). See also *Staples v. United States,* 511 U.S. at 602 n.1.

-4-

  (iii) a thumbhole stock;

  (iv) a second handgrip or a protruding grip that can be held by the non-trigger hand;

  (v) a bayonet mount;

  (vi) a flash suppressor, muzzle break, muzzle compensator, or threaded barrel designed to accommodate a flash suppressor, muzzle break, or muzzle compensator;

  (vii) a grenade launcher; or

(b) a semi-automatic shotgun that has at least one of the following characteristics:

  (i) a folding or telescoping stock;

  (ii) a thumbhole stock;

  (iii) a second handgrip or a protruding grip that can be held by the non-trigger hand;

  (iv) a fixed magazine capacity in excess of seven rounds;

  (v) an ability to accept a detachable magazine; or

(c) a semi-automatic pistol that has an ability to accept a detachable magazine and has at least one of the following characteristics:

  (i) a folding or telescoping stock;

  (ii) a thumbhole stock;

  (iii) a second handgrip or a protruding grip that can be held by the non-trigger hand;

  (iv) capacity to accept an ammunition magazine that attaches to the pistol outside of the pistol grip;

  (v) a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;

  (vi) a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the non-trigger hand without being

burned;

(vii) a manufactured weight of fifty ounces or more when the pistol is unloaded, or;

(viii) a semi-automatic version of an automatic rifle, shotgun, or firearm;

(d) a revolving cylinder shotgun;

(e) a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or weapon defined by [New York Penal Law § 265.00(22)(e)(v) as that section read under] the laws of [2000 and otherwise lawfully possessed] prior to September [14, 1994]; or

(f) a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or weapon defined [above] in [sub]paragraph (a), (b), or (c) [and] possessed prior to [January 15, 2013].

N.Y. PENAL LAW § 265.00(22)(a)-(f).

19. New York categorically prohibits possession of all such firearms. See *New York State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2015).

20. Violations of New York's Semiautomatic Firearm Ban is a Class D felony punishable by up to seven years in prison and a fine between $2000 and $10,000. N.Y. PENAL LAW §§ 265.02(7), 265.10, 70.02.

## II.   NEW YORK BANS RIFLES IN COMMON USE

21. Semiautomatic firearms "traditionally have been widely accepted as lawful possessions," *see Staples v. United States*, 511 U.S. 600, 612 (1994) (so categorizing an AR-15 semiautomatic rifle), and the Second Circuit has previously held that "[e]ven accepting the most conservative estimates" firearms banned by New York law "are 'in common use' as that term was used in *Heller*." *Cuomo*, 804 F.3d at 255.

22. Rifles built on an AR-style platform are a paradigmatic example of the type of arm New York bans. AR-15 rifles are among the most popular firearms in the nation, and they are owned by millions of Americans. A recent survey of gun owners indicates that about 24.6 million

Americans have owned up to 44 million AR-15 or similar rifles. *See* William English, *2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned* at 1 (May 13, 2022), https://bit.ly/3yPfoHw. And according to industry sources, more than one out of every five firearms sold in recent years were rifles of the type banned by New York. Nat'l Shooting Sports Found., Inc., *Firearms Retailer Survey Report, 2013* at 11.

23.     The banned semiautomatic firearms, like all other semiautomatic firearms, fire only one round for each pull of the trigger. They are not machine guns. *See Staples*, 511 U.S. at 602 n.1. What is more, the designation "assault weapons" is a complete misnomer, "developed by anti-gun publicists" in their crusade against lawful firearm ownership. *See Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting).

24.     A comparison to firearms used by the military demonstrates just how disingenuous the "assault weapon" moniker is. While an AR-15 can only fire as often as a person can pull its trigger, an M249 light machine gun, commonly used by the U.S. military, can fire between 750 and 1,000 rounds per minute, *Squad Automatic Weapon (SAW), M249 Light Machine Gun*, MILITARY ANALYSIS NETWORK, https://bit.ly/3tsQGtd, and "heavy" machine guns like the M61 series can fire significantly larger caliber ammunition (20mm) much faster yet (6,000 rounds per minute), *M61A1/M61A2 20mm Automatic Gun*, MILITARY ANALYSIS NETWORK, https://bit.ly/3ttnemV.

25.     Unlike these "weapons of war," central among the common uses of firearms banned in New York is defense of self in the home. For example, most AR-style firearms are chambered for 5.56x45mm NATO (similar to .223 Remington) ammunition, a relatively inexpensive and very common cartridge that is particularly well suited for home-defense purposes because it has sufficient stopping power in the event a home intruder is encountered but loses velocity relatively

quickly after passing through a target and other objects, thus decreasing the chance that an errant shot will strike an unintended target. Although most pistol rounds have less muzzle velocity than a 5.56x45mm NATO round, they have greater mass, maintain velocity after passing through walls and other objects, and pose substantially greater risk to unintended targets in the home. An AR-15 rifle chambered for 5.56x45mm NATO ammunition is an optimal firearm to rely on in a self-defense encounter.

26. Like the AR-15 generally, the specific features banned by the statute aid home defense. A flash suppressor, for example, not only reduces the chances that a home-invader will mark his victim's position; it also protects a homeowner against momentary blindness when firing in self-defense. David B. Kopel, *Rational Basis Analysis of "Assault Weapon" Prohibition*, 20 J. Contemp. L. 381, 397 (1994). Similarly, folding and telescoping stocks increase maneuverability in tight home quarters, *id.* at 398–99, as well as enabling safe storage of defense instruments in accessible spaces. A telescoping stock also allows a firearm to be better fitted to an individual shooter, thereby enhancing the ability of an individual to use the firearm safely and effectively.

27. Folding and telescoping stocks also increase the likelihood of successful home defense by permitting safe storage of defense instruments in accessible spaces and making the rifle maneuverable in confined spaces. *Id.* at 398–99

28. Pistol grips improve accuracy and reduce the risk of stray shots by stabilizing the firearm while firing from the shoulder. *Id.* at 396.

29. Most all common semiautomatic firearms, including those banned under New York law, can accept a detachable magazine. Detachable magazines not only assist law-abiding shooters to reload their weapon in stressful defense circumstances, but in the case of some platforms, including the AR-15, they are required to safely and quickly remedy malfunctions.

30. Encounters with criminal intruders in the home are not uncommon. For instance, according to a report by the U.S. Department of Justice, Bureau of Justice Statistics, household members are present for almost a third of all burglaries and become victims of violent crimes in more than a quarter of those cases. Studies on the frequency of defensive gun uses in the United States have determined that there are up to 2.5 million instances each year in which civilians use firearms to defend themselves or their property. Gary Kleck, Marc Gertz, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with a Gun*, 86 J. of Crim. L. & Criminology 150, 164 (1995); *see also* English, *National Firearms Survey, supra* at 9 (finding 31.1% of firearms owners, or approximately 25.3 million adult Americans, have used a firearm in self-defense and there are 1.67 defensive firearm uses a year).

31. Other common, lawful uses of the banned firearms are hunting and sport. At least a third of all gun-owners own a firearm for hunting or sport shooting, and recreational target shooting has been cited as the top reason, albeit closely followed by home defense, for owning semiautomatic rifles like those banned by New York.

32. Here again, the banned features of firearms mischaracterized as assault weapons serve lawful purposes. Folding and telescoping stocks, for example, allow for safe transportation, including in a hiking pack, an ATV, or a boat. These stocks also ease carrying over long distances while hunting. Both telescoping stocks and protruding grips open hunting and sport-shooting to those for whom recoil represents a high barrier to entry. Detachable magazines have the same benefits in hunting and sport-shooting as they do in home defense—improved reloading and remedying of malfunctions. And flash suppressors promote accuracy in target-shooting and hunting (especially at dawn).

33. By contrast, one use that is not common for so-called "assault weapons" is crime. According to a widely cited 2004 study, these arms "are used in a small fraction of gun crimes." This has long been true. *See* Gary Kleck, *Targeting Guns: Firearms and Their Control* 112 (1997) (evidence indicates that "well under 1% [of crime guns] are 'assault rifles.'"). Indeed, according to FBI statistics in 2019 there were only 364 homicides known to be committed with rifles of any type, compared to 6,368 with handguns, 1,476 with knives or other cutting instruments, 600 with personal weapons (hands, feet, etc.) and 397 with blunt objects. *See* Expanded Homicide Table 8, Crime in the United States (FBI 2019), https://bit.ly/3HdolNd.

34. The arms banned as "assault weapons" under New York's Semiautomatic Firearm Ban are not both dangerous *and* unusual.

35. The arms banned as "assault weapons" under New York's Semiautomatic Firearm Ban are common in all respects: 1) They are common categorically, as they are all functionally semiautomatic in their operation; 2) they are common characteristically, as they are all popular configurations of arms (e.g., rifles, shotguns, handguns) with varying barrel lengths and common characteristics like pistol grips and the like; and 3) they are common jurisdictionally, lawful to possess and use in the vast majority of states now and throughout relevant history for a wide variety of lawful purposes including self-defense, proficiency training, competition, recreation, hunting, and collecting.

36. There is no constitutionally relevant difference between a semi-automatic handgun, shotgun, and rifle. While some exterior physical attributes may differ—wood vs. metal stocks and furniture, the number and/or location of grips, having a bare muzzle vs. having muzzle devices, different barrel lengths, etc.—they are, in all *relevant* respects, the same.

37. Indeed, they are all common firearms that insert cartridges into a firing chamber, burn powder to expel projectiles through barrels, and are functionally semiautomatic in nature. They are all common firearms that have the same cyclical rate of fire: one round fired per pull of the trigger pull until ammunition is exhausted or the firearm or feeding device malfunctions. They are all common under the same jurisdictional analysis. And they are all subject to the same constitutionally relevant history under which New York's Semiautomatic Firearm Ban is clearly and categorically unconstitutional.

38. The statute's ban on acquiring, purchasing, receiving, transporting, possessing, and lawfully using an "assault weapon" is, therefore, a ban on keeping and bearing semiautomatic firearms that are commonly possessed and used for lawful purposes, including self-defense in the home.

### III. THE EFFECT ON PLAINTIFFS

39. Plaintiff David Vanchoff lives in Nassau County, New York. Vanchoff intends and desires to exercise his right to keep and bear a so-called assault weapon, particularly an AR-15 style rifle, for lawful purposes, especially home defense and target shooting. AR-15 style rifles are illegal under New York's Ban. Vanchoff would acquire, purchase or receive, and lawfully use this firearm, were it not for Defendants' enforcement of New York's Ban. In light of Defendants' actions, including the threat of arrest, confiscation, prosecution, fine, and imprisonment, Vanchoff continues to refrain from acquiring, possessing, and lawfully using an AR-15 rifle or any similar firearm, for self-defense and other lawful purposes.

40. Plaintiff Andrew Cross lives in Suffolk County, New York. Cross intends and desires to exercise his right to keep and bear a so-called assault weapon, particularly an AR-15 style rifle, for lawful purposes, especially home defense and target shooting. AR-15 style rifles are illegal under New York's Ban. Cross would acquire, purchase or receive, and lawfully use this

firearm, were it not for Defendants' enforcement of New York's Ban. In light of Defendants' actions, including the threat of arrest, confiscation, prosecution, fine, and imprisonment, Cross continues to refrain from acquiring, possessing, and lawfully using an AR-15 rifle or any similar firearm, for self-defense and other lawful purposes.

41. Plaintiff Aaron Leizerovici lives in Kings County, New York. Leizerovici intends and desires to exercise his right to keep and bear a so-called assault weapon, particularly a Palmetto State Armory custom rifle, for lawful purposes, especially home defense and target shooting. The Palmetto State Armory custom rifle is illegal under New York's Ban. Leizerovici would acquire, purchase or receive, and lawfully use this firearm, were it not for Defendants' enforcement of New York's Ban. In light of Defendants' actions, including the threat of arrest, confiscation, prosecution, fine and imprisonment, Leizerovici continues to refrain from acquiring, possessing, and lawfully using a Palmetto State Armory custom rifle or any similar firearm, for self-defense and other lawful purposes.

42. Members of Plaintiff FPC intend and desire to acquire, purchase, receive, transport, possess, or lawfully use semiautomatic rifles banned by the challenged provisions, and are subject to and adversely affected by the restrictions articulated in this complaint on "assault weapons."

43. But for the enactment and enforcement of the New York's semiautomatic weapons ban, these members would forthwith obtain and possess such rifles, but cannot do so because they are considered "assault weapons."

44. But for Defendants' enactment and enforcement of an unconstitutional ban, and Defendants' enforcement thereof, and the criminal penalties associated with violations of the ban, members of Plaintiff FPC, including Plaintiffs Vanchoff, Cross, and Leizerovici, would exercise their right to keep and bear the banned firearms for lawful purposes, including self-defense,

without the fear or risk of arrest and prosecution for engaging in constitutionally protected, lawful conduct.

## IV. DEFENDANTS' LAWS AND REGULATIONS VIOLATE THE SECOND AMENDMENT.

45. The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

46. The Fourteenth Amendment to the United States Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

47. The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

48. "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008) (emphasis in original).

49. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id*. at 634–35.

50. For this reason, "[j]ust as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that

-13-

were not in existence at the time of the founding." *Id.* at 582 (citations omitted).

51. When the Second Circuit upheld the constitutionality of New York's laws in 2015, it relied on a two-step test that was "one step too many." *Bruen*, 142 S. Ct. at 2127; *see Cuomo*, 804 F.3d at 253. Because the Second Circuit concluded that the so-called "assault weapons" at issue here are in common use, it should have held that the ban on ownership of such firearms violates the Second Amendment. *Cuomo*, 804 F.3d at 254; *see Bruen*, 142 S. Ct. at 2127.

52. In order to justify a law that affects Plaintiffs' Second Amendment rights, the government bears the affirmative burden of proving that the regulation is consistent with our nation's history and tradition. *Bruen*, 142 S. Ct. at 2127. As a matter of law, any regulation that bans firearm ownership in common use for lawful purposes like self-defense is inconsistent with this nation's history and tradition, and thus violates the Second Amendment. *Id.* at 2128; *Heller*, 554 U.S. at 624.

53. The firearms at issue in this case are the sorts of bearable arms in common use for lawful purposes that law-abiding people possess at home by the millions. And they are, moreover, exactly what they would bring to service in militia duty, should such be necessary.

54. In *Heller*, the Supreme Court held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Id.* at 592.

55. When seconds count, and the police are minutes or hours away, if they come at all—they certainly have no obligation to, *see, e.g.*, *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)—the People have a constitutional right to make use of common firearms for effective self-defense and not to be disarmed by the enactment and enforcement of the ban.

56. Assuming ordinary citizens are not disqualified from exercising Second

Amendment rights, the State must permit them to keep and bear the common firearms banned by New York for lawful purposes.

57. The Second Amendment is an "unqualified command." *Bruen*, 142 S. Ct. at 2130. The Second Amendment does not accommodate the use of any "means-ends scrutiny" of the kind that the Second Circuit applied when it upheld the constitutionality of New York's laws. *Id.*; *Cuomo*, 804 F.3d at 253. When a law—like New York's laws at issue here—prevents citizens from owning firearms that are in common use for lawful purposes, then the law violates the Second Amendment. *Bruen*, 142 S. Ct. at 2129–30. It cannot be justified by reference to any countervailing governmental interest. *Id.*

58. The right to keep and bear common firearms guaranteed under the Bill of Rights cannot be subjected to laws and regulations that prohibit ordinary, law-abiding citizens from keeping and bearing common firearms—particularly when such schemes place these citizens under constant threat of criminal sanction for violating them.

59. The enshrinement of the right to keep and bear arms in the Second Amendment has necessarily taken such "policy choices off the table." *Heller*, 554 U.S. at 636.

60. Yet, this is precisely how New York's semiautomatic firearm ban operates, completely shutting out ordinary, law-abiding citizens from exercising their rights in New York.

## COUNT ONE

**42 U.S.C. § 1983 Action for Deprivation of Plaintiffs' Rights under the Second and Fourteenth Amendments of the United States Constitution**

61. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

62. There is an actual and present controversy between the parties.

63. The Second and Fourteenth Amendments to the United States Constitution

guarantee ordinary, law-abiding citizens of states their fundamental right to keep and bear arms, both in the home and in public.

64. The keeping and bearing of arms is a fundamental right that is necessary to our system of ordered liberty, and is additionally a privilege and immunity of citizenship, protected by the Fourteenth Amendment.

65. The right to keep and bear arms includes, but is not limited to, the right of individuals to acquire, purchase, receive, transport, possess, and lawfully use common firearms for all lawful purposes, including self-defense.

66. New York bans firearms that are commonly used for lawful purposes, grounding this ban on an arbitrary combination of features that do not make a firearm more powerful or dangerous. No adequate basis exists to restrict such firearms, which fire only once per trigger pull, like all other semiautomatic firearms.

67. 42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law.

68. Defendants, individually and collectively, and under color of state law at all relevant times, have deprived the fundamental constitutional rights of persons in New York, including Plaintiffs Vanchoff, Cross, Leizerovici and all similarly situated members of Plaintiff FPC, through enforcement of the ban.

69. For all the reasons asserted herein, Defendants have acted in violation of, and continue to act in violation of, 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

## **PRAYER FOR RELIEF**

70. WHEREFORE, Plaintiffs respectfully pray for the following relief:

   a. A declaratory judgment that Plaintiffs Vanchoff, Cross, Leizerovici and all similarly situated members of Plaintiff FPC, have a fundamental right to keep and bear

arms, including by acquiring, purchasing, receiving, transporting, possessing, and lawfully using common semiautomatic firearms banned in New York for all lawful purposes including self-defense, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

      b.      A declaratory judgment that New York's ban on common semiautomatic fireams and all related regulations, policies, and/or customs designed to enforce or implement the same, prevent Plaintiffs Vanchoff, Cross, Leizerovici and all similarly situated members of Plaintiff FPC, from exercising their fundamental right to keep and bear arms, including by acquiring, purchasing, receiving, transporting, possessing, and lawfully using common semiautomatic firearms banned under New York law for all lawful purposes including self-defense, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

      c.      A preliminary and permanent injunction prohibiting each Defendant, and Defendants' respective employees, officers, agents, representatives, and all those acting in concert or participation with them, from enforcing New York's ban on semiautomatic firearms and all related regulations, policies, and/or customs designed to enforce or implement the same;

      d.      Attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and,

      e.      Any and all other and further legal and equitable relief against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

| | |
|---|---|
| Date: July 29, 2022 | Respectfully submitted,<br><br>/s/ David H. Thompson<br>David H. Thompson\*<br>Peter A. Patterson\*<br>William V. Bergstrom\*<br>COOPER & KIRK, PLLC<br>1523 New Hampshire Avenue, N.W.<br>Washington, D.C. 20036<br>Tel: (202) 220-9600<br>Fax: (202) 220-9601<br>dthompson@cooperkirk.com<br>wbergstrom@cooperkirk.com<br><br>\*Application for admission *pro hac vice* pending<br><br>*Attorneys for Plaintiffs* |

-18-